Oral argument, 15 minutes per side. Mr. Blumenfeld for the appellant. Thank you. Good morning, Your Honors, and may it please the Court. I am Jeremy Blumenfeld and I represent Appellant Life Insurance Company of North America, also known as LINA, or referred to as LINA in the briefs. With the Court's permission, I'd like to reserve three minutes of my time for rebuttal. You may. Thank you. This is the second time this case is on appeal to this Court. In the first appeal, this Court affirmed final judgment that had been entered by the District Court on June 24, 2005, in favor of Mr. Rochow and against LINA, finding that the decision to deny long-term disability benefits was arbitrary and capricious. At that point in time, the case should have been over. But instead, the District Court engaged in favor of plaintiff on a new claim for breach of fiduciary duty, based on the same wrongful denial of benefits, and awarded additional relief of $3.8 million beyond the benefits to which Mr. Rochow was entitled. This was error for three reasons. First, it violates the final judgment rule and the mandate rule, well-settled principles from the Supreme Court and this Court. Second, even had this relief been sought before final judgment, it's barred by this Court's decision in the Wilkins case, because the denial of benefits that formed the basis of the breach of fiduciary duty claim is duplicative of the underlying claim for benefits. And under Wilkins, and under the Supreme Court's decision in Verity Court v. Howe, such a claim is not cognizable. And third, the amount of the profits, so-called, bore no relationship to the actual investment returns earned by LINA on the funds that are at issue, and the factors that the District Court considered bore no relationship to any of the factors that this Court articulated in the Schumacher v. A.K. Steele case are supposed to be considered. Mr. Blumenfeld, may I assume correctly that you and your firm in Philadelphia do these ERISA cases all the time? We do, Your Honor. Yes. It's always interesting to see what comes out of Judge Tarnow's chambers. And in that case, having this across the country, have you ever found a case where, in addition to being awarded benefits under ERISA, the Court also awarded additional relief, other than in connection with an injunction dealing with claims handling processes, and or additional relief because there was a separate misrepresentation. Are there any other cases in the whole United States? The answer to your question is, no, characterized as such. There are some cases that allow pre-judgment interest to be awarded. And that's something that this Court has recognized a number of times and something that Judge Tarnow specifically rejected in this case because the plaintiffs didn't initially ask for it. And then when it came very close for the judge to enter his actual award, plaintiffs tried to sort of recharacterize what they were asking for as pre-judgment interest. And Judge Tarnow said, no, that's not what this is. I'm awarding this accounting for profits. So the answer to your question is, no, there is pre-judgment interest. You would concede that pre-judgment interest could be appropriate in a given case subject to the amount? That's absolutely right in consideration of the appropriate factors, correct. Do you agree that disgorgement of profits is an equitable remedy rather than a legal one? Disgorgement of profits can, in the right circumstances, particularly when you're dealing with plan assets, be relief that is characterized as, quote, unquote, equitable relief. So the benefits that were paid ultimately to Mr. Rochelle's estate, I believe. I believe the benefits actually were paid to him initially, and then there were additional funds that he asked for. But the long-term disability benefits would have stopped payment upon his passing away. How is it not a windfall for Lena to allow it to keep profits it made on the money it didn't lawfully belong? Well, it's not a windfall, Your Honor, for a number of reasons. First, when you're talking about specifically the amount of the money, if you were looking at how much Lena actually earned on those investments, that wouldn't be the 25 percent a year that Judge Tarnow based his decision on here. That was a return on equity analysis that bore no relationship to the actual investment returns that were made. Second of all, we're not dealing with plan assets. Your expert said $32,000? Correct. It was a much smaller number. It was in that neighborhood. I'm shocked at that. At the amount of that number? I'm shocked that your expert would come up with such a small number compared to Mr. Rochelle's. Without getting too much into the details, Your Honor, the reason that the number was so small is that these funds, funds that are meant to be paid in benefits, are put in an There's no evidence in the record that that account was ever right? Your Honor, there was testimony that those funds, in fact, were not physically segregated into that separate account. I was just addressing, Your Honor, why our expert testified to the number that he did. And you are correct, Your Honor, there may be a middle ground that is based on the return of the assets, but that's only one of the factors that this Court in consideration. Even if we assume the characterization that Judge Watson used, that this represents a windfall to the insurance company. Let's not quibble about that for just a second. Would not that be the case in every single ERISA benefit case where the benefits were not paid, a court finds that that refusal was arbitrary and capricious or whatever, orders them to be paid, but in the meantime, the insurance company had the use of that money for whatever purpose to which they want to put it? You are correct, Judge McKeague, and I guess I'll add two things about that. First, you are correct, it would happen in every denied benefit case because the plaintiff in that case is saying, you were supposed to have paid me money that you have not yet paid me. And during the time period that the insurance company or the employer or the plan or the third party administrator, whoever has those funds, has those funds, we could end up in a whole second round of disputes, a second round of fighting, and as we say in our brief, Your Honor, it would undermine the entire efficient administration of these benefit plans and make them costly and burdensome to administer, and plan sponsors, frankly, wouldn't do it anymore if that was the consequence. That's what the Supreme Court recognized in the Rush case and in the Frommer case. What I want us to focus in on in a minute, and in a way, I'm just sort of telegraphing my question to your opposing counsel so they can be thinking about the answer, because I'm pretty sure I know what you're going to say. ERISA is designed to address itself to the injury occurring to the claimant. Everything speaks to injury. It doesn't speak to remedy to say, it's probably correct to say that a remedy for an injury could be disgorgement. But the focus in ERISA, it seems to me, and this is what I want you to address and your co-counsel, your other counsel to address, is the focus always seems to be on the claimant, not on the company, to see whether they have kept money they shouldn't keep or whatever. Am I right about that? Well, and that, Your Honor, is consistent with the common law outside of the ERISA context as well. And if you look at the Schumacher case, it articulates it very well. Too much or too little are both inconsistent with ERISA's goal of making the claimant whole. And the Schumacher case talks about one of the factors being the time value of money to the plaintiff, the inflation rate, how much money the plaintiff would have had had the benefits paid at the appropriate time. All right. So doesn't discovery show that there's an internal document that references Lena's knowledge early on that Mr. Rochelle's claim is timely filed and yet there's a subsequent denial? I mean, there's a series of denials. Well, this guy was a president of an agency that may even have placed Lena insurance policies over time, correct? I don't know if he placed any Lena insurance policies. He was the president of a company at a point in time. I would submit that doesn't distinguish his circumstance from anybody else's. And yes, there were interim decisions denying the benefits. And what this court, in a number of cases and a lot of other courts have held, is that it is the ultimate decision denying benefits that's supposed to be reviewed and supposed to be reviewed based on a limited administrative record. And that's the other very disturbing aspect of what Judge Tarnow did here. Engaging in four years of additional discovery, expert reports, that's antithetical to the entire administration of employee benefit plans that's supposed to happen. Because in every case, as you suggested, Judge McKeague, there would be a first round of proceedings based on the also be, at the same time, if what happened here is correct, a whole second round of proceedings before final judgment in which they take discovery about the defendant's financial situation, how much was earned, expert reports, et cetera. And all of that undermines the efficient administration of employee benefit plans. And by the way, none of which would permit all of this to happen after final judgment. Well, I suppose the answer to that argument might be that's fine in connection with an Here we have a breach of fiduciary duty finding, for which I think, interestingly enough, you haven't appealed. But having said that, it seems to me what Judge Tarnow says here is that because the insurance company acted in an arbitrary and capricious way, therefore, they breached their fiduciary duty. So now we would be, instead of distinguishing this case from others, we would then be right back to every other case if he's right, that if you're arbitrary and capricious, you also then violate a fiduciary duty, which also can't be true. But that's what you haven't appealed. Well, the finding, there is no finding of any fiduciary breach other than the wrongful denial of benefits. And we say and have said that that is duplicative of the claim for benefits. I think the district court, Judge Tarnow, issued a decision, issued a judgment saying there was a denial of benefits that was arbitrary and capricious. This court affirmed that judgment. And we are not challenging the judgment that was part of the original judgment and that was already affirmed. All Judge Tarnow said now is that I'm going to use that finding that I already made, that was already affirmed, and say that that's a fiduciary breach as well. And that's what we say can't happen. That's what Wilkins bars, that's what even in Gore, the case that plaintiffs rely upon, the court made clear that where the claim was a breach of fiduciary duty based on the denial of benefits, that that's not cognizable. And what the Sixth Circuit said in Gore specifically was in that case it was dealing with a situation where there were two claims that were, quote, distinct and unrelated to each other. And that's why it allowed the breach of fiduciary duty claim to go forward. But went on to say that had Gore alleged the defendant breached its fiduciary duty pursuant to 1132A3, that's the statutory provision at issue in this case as well, for wrongful denial of benefits. In that case, the claim would not have been allowed to go forward. So isn't the bigger problem here under Gore that even if you can properly characterize this as a distinct claim under 503, Gore also said you can't recover under both. You can only recover under the equitable claim if you lose on the disability benefit. That's correct, Your Honor. And the issue in Gore, to be precise, involved a plaintiff who was entitled to disability benefits under an own occupation standard, but not under an any occupation standard. And the defendant had paid benefits for the first year, but then said after 12 months you're subject to an any occupation standard. And the plaintiff said, but wait a second, you told me that the own occupation standard applied. You misrepresented the terms of the plan because you told me that that own occupation standard applied for two years, not one. And as a result, even if it's just subject to an own occupation and even if under the terms of the plan, it would be subject to an any occupation standard. And therefore, as you just said, Judge McKeague, I wouldn't be entitled to benefits. I should be able to prevail on my breach of fiduciary duty claim because of the misrepresentation. Because you didn't get the benefits. Because you didn't get the benefits. All right. We'll hear from you again in rebuttal. Thank you very much, Your Honors. Good morning. My name is Eric Scharf together with trial counsel, John Cooper. I represent the estate of Daniel Rochoe. Your Honor, I'm going to try to answer some of the questions you posed. You were asking if this has ever been done before. Not only has it been done, it's been affirmed by another full U.S. Court of Appeals. The case of Park v. Standard Reliance Life that we cite in our brief specifically affirms the equitable remedy of equitable accounting. And you also... Park also actually involved... Park involved pre-judgment interest. Your Honor... There's some language in there that seems to be broader than just pre-judgment interest. But the question in Park was pre-judgment interest, was it not? And they specifically, the court specifically... Am I right about that? To a certain extent, Your Honor, but the court specifically affirms it as allowable as equitable accounting, using those exact terms in Park. And... One quote that I have is the court awarded pre-judgment interest as, quote, an appropriate equitable relief, end quote. Now, they did characterize the interest as an accounting for profits. That's correct. So you have to bootstrap that to say we're not going to... We're not going to ask for pre-judgment interest, or even if we don't get pre-judgment interest, we get something that's far more expansive than pre-judgment interest. That's disgorgement. It's not necessarily more... Other than Park, and we've talked about Park a little bit, is there any other case out of the hundreds of thousands of ERISA cases that this has ever occurred, to the best of your knowledge? Equitable accounting, specifically, other than Park? Disgorgement of profits, in addition to recovery of the benefits due. No, Your Honor. And I'd point out that... So how can that possibly be consistent with the goal of ERISA and the whole process that we follow under Wilkins? Well, let me speak to both ERISA and Wilkins. I think I'll take Wilkins first, if that's okay. Sure. First, what Wilkins does is stop and end run, and it's based on verity. What Wilkins says is there's the potential for somebody to claim that they should recover benefits under the benefit recovery provision. But they could also say, you know what, we can recover damages for loss of the benefits under the catch-all provision, and thereby evade the limits on the benefit recovery provision. The benefit recovery provision, according to longstanding Supreme Court authority, is strictly equitable, doesn't allow for compensatory damages... Excuse me just a second. You're saying that Wilkins says that there's an end run available? They use the word repackaging, Your Honor. You repackage your benefit claim as a breach of fiduciary duty claim in order to evade the restrictions on... Wilkins says you can't repackage. That's exactly right. And the point of it is that somebody could try to repackage the benefit of the catch-all, seek a jury trial, seek compensatory damages, seek punitive damages, and otherwise evade the restrictions on benefit recovery. And that was exact... The repackaging language actually comes from verity. One of the amicus in verity raised this concern because verity decided that individuals could avail themselves of the catch-all. And one of the amicus said, well, if they can use the catch-all, why wouldn't they just use the catch-all instead of the benefit recovery provision to get benefits? And they would do that impermissibly by violating the restrictions on the Benefit Recovery Act. Why is your client entitled to disgorgement? Because fiduciaries... What have you pled that entitles? Among other things, we pled breach of fiduciary duty, but we also expressly pled the remedy of equitable accounting. Equitable accounting leads to disgorgement. It's that simple. It's a separate remedy. So it would apply in every single case. If there's a... No. See if this works. The way this case seems to have unfolded is there's a finding of arbitrary and capricious. Sixth Circuit affirms that. It comes back. He then says, because they were arbitrary and capricious, that is a violation of a fiduciary duty. And thereby, that kicks you into 503, and you get equitable relief, and that equitable relief includes disgorgement. That's the line of thinking here, right? Yes. Now, why would that be different in this case than any other case? I know you attempt to say, gee, this guy was a company president. There's a lot of money involved. They were really, really bad in this case. But trust me, a lot of these ERISA cases where the conduct of the insurance company is not exactly exemplary. So how would it be different than any of the cases that we deal with? Well, Your Honor, it is different in the magnitude. And that's important because... So you get disgorgement because here it's a lot of money. You wouldn't get disgorgement if it was a little bit of money. Yes, to a certain extent, Your Honor. And here's why. Because in the vast run of the mill cases where somebody has, for example, a smaller income, say somebody's making $50,000, we don't get the $50,000, you get 60% of that, $30,000. In that case, and usually the delay is going to be a matter of a year or two. So you're talking about principle of maybe $50,000 over two years. The spread or the gulf between interest and the profit of the insurance company is going to be, A, there may not even be any spread. So where do we draw the line if the line is drawn based on there's a lot of money involved? Or it took too long? It's a discretionary ruling with the district court, Your Honor. And here it was particularly justified because you had an amount pushing a million dollars. You had a time period... Let me interrupt you for a second because usually we would look to see whether there is a distinct injury that justifies, in this case, this equitable relief. So the district court, unless I misread this, does not identify any distinct injury that your client suffered apart from the injury of the denial of the benefits. Those are two different injuries, Your Honor. Sorry, Your Honor. What are two different injuries? The denial occurs at one point. In 2003 is the final denial. It's still from 2003, it is the time value of money that's the additional injury. It's the fact that... Let me just ask you a question there because essentially, is it not true that at least one of the reasons why this took so long is that instead of the normal Wilkins review the administrative record procedure and filed cross motions for judgment on the record, that's how these things work in district court. When this went back for the second round of relief, now we're into sort of a real trial process with discovery and going back and forth, which obviously takes time. There being a long delay would occur in every single ERISA case if you're entitled to discovery to go prove up what the insurance company improperly gained by holding onto the money. The discovery had nothing to do with the delay. The discovery happened after all the principal was ultimately paid. The discovery had absolutely no connection whatsoever to the delay. The discovery did take a little bit of time, but it was really a matter of a handful of interrogatories and two depositions, one of each expert. You had an administrative process that played out over the course of a year, year and a half, two years, where Lina kept propounding nonsensical and outright fraudulent rationales. Judge Watson, you hit upon this. What they did actually is said that the claim was late when they knew that it was timely, and they wrote that in a letter saying, you can't pursue this. Your claim's late. They knew it was timely, but you had the administrative process. Then you had two years in front of the, well, a year and a half in front of the district court on the basic question of the validity of the denial. We can't hold that against Lina, can you? I think you can, Your Honor. The district judge took a year and a half on a simple ERISA case? I don't know that it's that simple. And then Lina took an appeal. Then after that, there was a protracted secondary round of administrative proceedings as soon as we got back from the Sixth Circuit, because Lina, as an ERISA fiduciary, is entitled to administrative deference, and they can decide things. And we said, okay. So back to the question. This guy's entitled to benefits. Yes. They were improperly withheld. He eventually gets those benefits, and he has the possibility of getting prejudgment interest in connection with the deprivation of those benefits to allegedly make him whole for the time period when he didn't have the money. So assuming that's his package in the normal ERISA context, what is an additional distinct injury beyond that that entitles him to disgorgement? The amount of time and the unjust enrichment. The sheer amount of money by which Lina, a fiduciary, profited. All right. Do you have any authority for that? That unjust enrichment is an... The amount of money or the amount of time it took to get it is a separate distinct injury. Well, as Judge Keith recently wrote in a decision with Judge Batchelder, one of the concerns and interest is unjust enrichment. An injustice or unjust enrichment is just that, an injury. We suffered because we didn't have our money, and this is money meant to replace income on a day-to-day basis. I get that. That's what prejudgment interest is normally for, the length of time and the rate of return. I get that. The insurance company apparently agrees with prejudgment interest, but here Judge Chernow said, I'm not going to give you prejudgment interest. I'm going to give you disgorgement, $4 million. Because he's going to examine the rate at which Lina earned and have Lina remit that money. Are there any cases where other than prejudgment interest, which takes the rate of return and the amount of time into account, that you found that says, because it took a long time and because a lot of money is involved, that is a separate distinct injury? No, Your Honor. No particular cases. But again, I think... This would be groundbreaking in the ERISA world. You'll be an ERISA rock star. I don't know that it's that groundbreaking, Your Honor, because I don't think... I think what you're focusing on is a technical, legal approach to, well, it's always going to be available, but it's not, and it's a matter of transaction costs and district court discretion. This case is unique, and you're right, it's unique, but it's unique because of the facts. The incredibly high income, the incredibly long amount of time, and the incredibly high earnings rate of Lina. All three of those combined into the perfect storm of profit, such that Lina is unjustly enriched to the tune of approximately three and a half million dollars. Doesn't it speak to a systemic issue here? Isn't this a method of doing business? Isn't that what we're up against here? That is certainly a concern that Lina recognizes, and this is the rationale underlying centuries of law that says fiduciaries cannot profit in any context. Is there any evidence in this record that suggests that there is a systemic problem, as was recognized in Hill, that then went to injunctive relief about class-wide claims handling, that Lina's ordinary course of business is we're going to delay and obfuscate, or in your case, you've actually accused them of fraud. Is there any evidence in the record other than they screwed up in this case? I don't think they screwed up. They intentionally screwed up. Any record that they intentionally screwed up in any case other than this case? No. This case concerns this case and this case alone. Actually, amicus put in information about a California regulatory finding where there were other problems at Lina, but that's not officially record evidence. This is not prosecuting something on a nationwide basis. There's no question. So Judge Charnow could not have relied upon that. That was not before. No. But again, a district court has a discretion to fashion appropriate equitable remedies. It's not going to happen in the run-of-the-mill case because if you're dealing with a relatively small amount of money over a relatively short amount of time, the amount at issue is going to be fairly small, even if there's a gulf between a randomly set interest rate and the outweigh the transaction costs of taking the effort to say, wait a minute, you've got so much money and so much time and so much profit or profit rate that we're going to take the time, we're going to invest in figuring out exactly what it is, and then order that that be remitted. So you don't think that the threat of engaging in this exercise that would encompass these transactional costs that you're just articulating, you don't think that threat is then not going to be made by every single ERISA claimant's lawyer in order to get the insurance company to settle so that they don't have to go through something that Wilkins says they don't have to go through? This is a great weapon. I'm not saying that that's wrong, but it is what it is. Again, the difference between prejudgment interest and the earnings rate, I don't think is going to permit that. But again, going back to whether Wilkins allows this, what Wilkins stops is repackaging your benefits claim as a breach of fiduciary duty claim to avoid the limitations. In Wilkins, the heading is D, compensatory damages. So what somebody does is say, I don't want to abide by the limits in the benefit recovery, or I want a second bite at the apple for the same thing. In Wilkins, he was denied benefits by the district court judge and said, well, I'd still like a jury trial for compensative and punitive damages. We're nothing like Wilkins. We seek a separate and distinct remedy. The principle is what's at issue in the benefits case. In accounting, what's at issue is the profit or the return on that over the spread of years. I agree you're seeking a different remedy. Nobody could dispute that. The question is whether it is a different or additional remedy that is tied to a separate and discreet injury rather than the injury underlying the denial of benefits. And your claim is that that separate injury is, this is a lot of money. It took us a long time to get it. The injury, most specifically, is the time to get it. The first injury is denial. It happens at a point in time. The additional injury is, yeah, we got the benefits, but it took us a long time. Yes. That's the injury. And the unjust enrichment of our fiduciary using our money to make money itself, something that the law has to do. Thank you, Your Honors. I'd like to start, if I could, by just addressing the complaint in this case, because I know Judge Watson, you had asked a few questions about that. First of all, there is no allegation, no evidence, no suggestion anywhere that Lina's claims handling process are defective in general or that there were systematic problems, anything along those lines. This case was only about this case. And if you look at the complaint specifically, the allegation with respect to the breach of fiduciary duty doesn't even allege anything with respect to the delay in paying benefits. It alleges instead that Lina's actions, quote, in denying plaintiff's disability benefits is a violation of each and every one of its fiduciary duties. I suppose I'm referring to the Supreme Court's Metropolitan Life v. Glenn finding that ERISA fiduciaries that pay under an inherent conflict of interest. And that would have been a factor in the decision about whether the decision was arbitrary and capricious. That's correct. And by the way, the Supreme Court in MetLife v. Glenn acknowledged that the lion's share, the overwhelming majority of denied benefit cases are decided under that standard. But was this? It was decided under that same arbitrary and capricious standard, yes. Judge Tarnow held that as part of his order that was part of the a fiduciary breach says this. And this is from docket entry 67, page ID 936. In this instance, Lina's denial of benefits to Rochelle was arbitrary or capricious. Surely arbitrary or capricious action by a fiduciary is a breach of the highest standards that the law imposes on fiduciaries. That's it. That was the basis for the analysis, which would mean, as you suggested earlier, Judge McKeague, that every time benefits are denied in the lion's share of cases where the arbitrary and capricious standard applies, Judge Tarnow's rationale would apply and say that you can get this accounting for profits. Now, Plaintiff's counsel said that this won't happen in every case because the dollars here are large. First of all, that finds its place nowhere in ERISA, nowhere in the statute or the case law that whether somebody has a claim or not depends on how much money their benefits are ultimately worth. To the contrary, ERISA has a fee shifting provision precisely to encourage people to bring claims even where the transaction costs might not be very high. And I would submit further, Your Honor, than even a plaintiff who made a tenth of what this plaintiff made. And so the benefits that would be at issue would not be somewhere south of a million dollars but around $100,000 instead. If that person bringing the claim for $100,000 in benefits could say, wait, I also want an additional $380,000, they would bring that claim. They would pursue that relief. If they're going to bring a claim that at the outset is worth less money, they would take whatever opportunities they could to pursue the additional relief. There's no basis in any case for suggesting that this case is unique or different or that the rules are different because the amount of money that's at issue is different. And what took a long time, Your Honor, in this case, the administrative record worked through the process that it's supposed to work through. Lina made a mistake. Its decision was arbitrary and capricious. Judge Tarnow, in his original opinion, and I say opinion, it was the oral argument transcript because his order said, for the reasons stated on the record, I'm finding as such. He ruled from the bench. Correct. And what he said in that, let me find the notes so I make sure I get it right, Your Honor. He said, first of all, he recognized that this was, quote, not an easy question as to whether plaintiffs or Lina prevailed. And he also said that there was evidence in support of Lina. That is, the fact that he was able to work is certainly evidence for the defense. That's a quote from the appendix at page 25. Would you wrap up your thought here? Absolutely, Your Honors. Judge Tarnow, the decision below awarding $3.8 million should be reversed. It's inconsistent with this court's decision in Wilkins. It's inconsistent with the final judgment and mandate rules. And the district court didn't consider any of the prejudgment interest factors that are supposed to be considered. And with that, I'll thank you all for your time. All right. Thank you. The case will be adjourned.